Good morning. On April 5, 2006, the District and Student T.L. reached a written agreement resolving past disputes. As part of the agreement, the parties agreed to special education and occupational therapy, taught concurrently with Applied Behavior Analysis, or ABA. This schedule and manner of administration was implemented between the parties. On April 25, 2006, T.L.'s mother was informed that the District would no longer be providing ABA services during the OT and speech and language sessions. However, rather than reschedule the ABA for a different time, the District maintained the same schedule. So when Student left his home to attend OT and speech and language, the District sent ABA therapists to Student's home. How long did the OT and language sessions last? And what time were they? Well, the OT previously had a Monday, Tuesday, Wednesday, Thursday, Friday schedule. ABA services were 4.30 on Monday. Tuesday, they were 3.30 to 5.30. Wednesday, they were 4.30. Thursday, they were 4.30. And Friday, they were 4.30. So they all went speech and language. They went concurrently. And the new schedule on Monday, ABA services remained at 4.30. Tuesday, Tristan, or excuse me, T.L. was at from 3.30 to 5.30. He was at my gym, which is similar to an OT service. And the District would send ABA staff to his home for that service while he was away from the home. I understand from your complaint for, I think it was 16 months prior to this, you had the services concurrent. That's correct, Your Honors. And the settlement, when you had the settlement, you provided 10 hours for the ABA, but there were no times set for either of those services or any other services. That's correct, Your Honor, but they were agreed upon by the parties, and it would make sense that you would provide the service at a time that he could actually receive it. Well, we're in 12B6 mode here, so we're going by the allegations of your complaint. So how do we determine from the allegations of your complaint that there was a breach of contract, as you allege? Because the services weren't provided per the agreement. But the agreement didn't provide the exact times. Yes, Your Honor, but there's an implied covenant of good faith and fair dealing. I understand, so there's an administrative process to get that resolved. Your Honor, and you did do part of the administrative process, right? We went through the CRP process. Okay, and then there's one more level, and you chose to not pursue that. Because it would be futile, because under Weiner, there's no authority for OH, which is the administrative law judge, to interpret a settlement agreement. But they could refine the time. Excuse me? Couldn't they say, okay, you're going to do it at 2 a.m., 2 p.m., 3 p.m.? In our experience, Your Honor, OH, any time we mention the word settlement agreement, and we're asking them to interpret it, it's been dismissed. I mean, that's based on our experience and based on our understanding of this court's decision of Weiner. Then you go to district court. What's the big deal? How long would that make it? We did go to district court, because under our interpretation of Weiner and Porter was that OH has no authority to enforce its own orders. We executed a settlement agreement. The district court... Sorry, I'm not making myself clear. Okay. You tried to get this resolved through the CRP process. That's correct, Your Honor. Couldn't the OAH do the same thing that the CRP process did? No, Your Honor, because OH has no authority to enforce settlement agreements. Well, what authority does the CRP process have to enforce settlement agreements? They have the authority to decide and enforce orders, and this was a settlement agreement. How would they enforce it? Send the sheriff out or what? Well, they have the authority to remove funding from a school district that refuses to comply with an order that's been issued by the office of the district... Well, but they're refusing to comply. This is not space science. This is not space science. This is a question of what time somebody shows up. So if the parent and child decide to go at one time and the district goes by the other time, someone's going to have to say in the middle, wait a minute, settle down. Now, obviously both parties, I have no idea what your problem is. It is not space science. You went to arbitration before our court and somehow you couldn't even arbitrate it. And I can understand why you can't figure it out. Now, maybe, and your complaint doesn't specify that either. All the complaint says is you're entitled to these settlement terms of 10 hours, but it doesn't describe why you can't do it. You go somewhere, they go somewhere, they show up when they know you're not going to be there. Well, I'm sorry. Why, again, as Judge Silverman says, why can't that be resolved? It's a dispute. Your Honor, I agree with you. I think it should be resolved and I think my client has made great efforts to try to resolve it with the district, but they're very insistent that the ABA services have to be provided within her home. That's fine. We're talking about time. Right. And I'd love to get together, have my client get together with the district and try to resolve it, but we've gone down that path. Why did arbitration before our court fail? It has nothing to do with the case, but, again, why did arbitration fail before our court? Evidently, Your Honor, I'm sorry, I wasn't there in person, but I can't say exactly why the parties didn't come to an agreement. Okay. How long does it take to file an OAH request? It depends on the complexity of the issues. It could take anywhere from, you know, attorney time, maybe two to four hours to prepare a complaint and get it filed. And typically, you know, you get a hearing dates within the next 30 days. That's what I'm getting at. You know, I don't deal with this every day, but I'm kind of at a loss as to understand why this case has been at the district court and now here at the appellate court when, you know, for very little effort you could have seen whether the OAH would or would not have helped you. If they wouldn't help you, then here we are, and then you're off and running. They might have resolved the problem for you. I mean, as a practical matter, I don't understand why you don't pursue that. Because, Your Honor, we interpreted Wiener to say that, in this court's decision, Wiener to say that going through OAH on an issue of the settlement agreement, something that's already been signed, and based on that, an order of dismissal that's already been issued by OAH would satisfy the exhaustion requirement. Okay. Well, maybe that's your interpretation, but the district judge, who's no dope, had a different interpretation. So why not go back and let OAH see if they can help you? With all due respect, Your Honor, his interpretation was based on a Virginia case outside the circuit. Sounds to me like two parties don't want to get along, and you want the federal court to solve a problem, which is a local school district problem. And we don't know what OAH would have done, because you're telling us that they can't interpret it, and it would take time, and there's futility. That's correct, Your Honor. Based on this court's decision in Wiener. Well, yeah, we, I understand. Okay. Did you want to reserve some time for rebuttal? With respect, three minutes, please. Well, you've only got two and a half minutes left. Okay. Well, I, okay. And drinking. All right. Two and a half minutes. Okay. Thank you very much, then. Good morning. Good morning, Your Honor. It's Marlon Watlington on behalf of Palm Springs Unified School District. Let's dig right into this. This is a 12B6, and they've alleged in the complaint that you sent people out when you know, and you've decided that these AHA, AMA, is it AMA people, ABA people, have to have in-house. I can understand that. They have to be in-house. Before that, 16 months before, according to the complaint, you were having them concurrent with those other services. However, they now say in their complaint that because they have to go to these other services and you know they're going to these other services, you still send out on two days your ABA people knowing they're not going to be there. Now, what do we do with that complaint? We've got to take those as true. We're not in discovery here. We're not in summary judgment. Haven't they shown something that you've refused to comply with the agreement to deliver those services? You deliver the services to nobody. There's no one home. Yeah. Your Honor, precisely why, and what I was going to come up here and address is the exhaustion argument, but precisely why I wanted to do that is because if we had a record prepared by OAH with transcripts, we could show you exactly why we sent individuals out there not knowing that they weren't going to be there to provide the services at that time. Because we're faced with a 12B6, we're kind of limited here in what we do. I mean, if we had a factual record here, we could say, oh, well, we understand. I don't understand anything from this other than what he says in his complaint. That's exactly our point about exhaustion, Your Honor, and that's what I wanted to address what the court's just indicated. Plaintiff has informed the court that according to Weiner and a few other courts they've, or cases they've listed, CT versus Vacaville, Pedraza, and Porter, that if they went before OAH, which Your Honor's made a great point in asking, why don't you just file and see if they're going to say they don't have jurisdiction. They've indicated that these cases stand for that proposition, but those cases are easily distinguishable from this case, and it was mentioned in our reply brief at the district court level, and also they've admitted to it in the opposition brief. The distinction is, is the settlement agreement that they're alleging to cover the school year for the 2005-2006 school year. The terms of that naturally only cover that year. The compliance complaint that they're appealing and asking for reconsideration over is over the 2006-2007 school year. There was no settlement agreement at that particular time. They argue a separate issue, which could also be decided by OAH, whether or not the settlement agreement constitutes statehood, which is a solely separate issue from whether or not OAH would have jurisdiction. They are correct in asserting that in all the cases that were brought before OAH, where they said that specific school year was covered by the terms of the settlement agreement, therefore, we don't have jurisdiction to hear these issues. And in all the cases they cited, the due process request was filed before OAH or CO, and they either had a final order already from a due process hearing, or the terms were directly covered by a particular school year that they wanted OAH to address, and OAH said we don't have jurisdiction. The distinguishing factor here is that there is no settlement agreement, in effect, for the 2006-2007 school year, which is what this compliance complaint deals with. Well, I would just look, I just looked that up. It seems to me in their prayer, they're talking about missed sessions from April 25, 2006, to the date of the decision, whatever that date of decision was. And it's true, the settlement does go through the 2006 year, or 2005-2006 year. So your interpretation of the complaint is they're asking for relief beyond the terms of the settlement agreement? Your Honor, if you look at the excerpts of record. I'm looking at the complaint. We're on 12B6. What does the complaint say? The complaint, well, if you look at the reply, if you look at the oral argument in the complaint, which occurs, or which is in the excerpts of record, beginning on page 190, they dropped their complaints that dealt with, or the issues that dealt with the 2005-2006 school year, because we made a statutory argument indicating that you never appealed that first compliance complaint in a timely fashion. So they dropped. They appealed the second compliance. They appealed the second compliance complaint. And if you look at the second compliance complaint, it dealt with everything in the 06-07 school year. I understand, Your Honor, that they begin by talking about things that happened in April of 2006, but I direct you to the administrative, or the excerpts of record, page 11, which show that the compliance complaint itself, when you get into the substance of their arguments, all indicate that currently, and this is the December of 2006 filing, all of these problems were currently, at that time, currently, Tristan is enrolled in my gym. Despite numerous requests to provide his in-home ABA services on time, the available, the district refuses to comply with parents' requests. On August 17th, which is outside of the terms of the agreement on that same page, they talk about an IEP meeting on September 11th, 2006. All of those are related to the 06-07 school year. Let me see if I understand the story right, make sure I've got it right. The settlement agreement provides that they're going to, the school district is going to provide certain services. Correct. It doesn't say exactly what days and what times the services will be provided. Correct. There was some kind of informal understanding about when the certain therapists would be at the house and when they would be elsewhere. Correct. And that informal understanding fell apart. It fell apart when the parents said that she could no longer be there at that particular time. For whatever reason, it didn't work. Correct. They then file a complaint resolution procedure that's tossed out. Actually, it's not tossed out. It's heard and ruled upon during the 05-06 school year, and they found in favor of the district. Okay. Now, the next step, you say, is to go to the OAH. Correct. Could the OAH give them what they wanted if the OAH agreed with them? Could they specify the times? You'll do it at 2 o'clock on Thursday, 1 o'clock on Monday. Could they have the authority to do that? At that particular time, when the initial compliance complaint was filed, there were terms of a settlement agreement in effect for that school year. So plaintiffs may have been able to, or appellants may have been able to argue at that time that OAH didn't have jurisdiction. There's still no cases which say that you should not present the matter before OAH and allow them to say we don't have jurisdiction, which is what they never did. But at that particular time, there may have been an argument that OAH would have ruled that there's no jurisdiction. Well, then he wins, doesn't he? No. The problem is, Your Honor, they never appealed that initial decision, which was rendered for the 05-06 school year. They then wait six months to December of 2006 and file a second compliance complaint before the CDE, which once again rules in favor of the school district, and that's the decision that's being appealed. Now, the 06-07 school year was not covered by the terms of any settlement agreement. So at that time, if they were to file with OAH, there is no jurisdictional bar because there is no settlement agreement in effect. I'm looking at the decision, if you're correct. I'm looking at the decision of the April 3, 2007. That's the second decision? February 14, 2007, Your Honor. And as to the causes, it's talking, it seems to me, and I'm just off the top here, the prayer says the district denied the FAPE and refusing to fully implement the terms of April 25, 2006 agreement, it doesn't seem to me to say anything about 2007. I'll have to re-review this. So what am I missing? If you look at the excerpts of record, you can see from the, which is beginning on page four of the excerpts of record, this is the settlement agreement that they're referring to that was in effect. If you look at it by its natural terms, it talks about these services will be provided the remainder of the 2005-2006 school year and the July 2006 extended school year. Now, I understand that, but what I don't understand is your position that the second hearing covered not 2005-2006, but the 2007. And I don't read this prayer that way that's in this complaint for the second one. But I don't know, maybe I'm missing something. Well, if you look at their actual compliance complaint, it was filed in December of 2006. And the allegations in there begin by talking about the original settlement agreement that was no longer, the terms had already expired. Now, they argue. But as I understand the complaint, they're saying we want recoupment for what we missed during that period. No. That's what I was trying to explain to you. If you look at their oral argument, which is beginning on page 190, they waived, they said that we're no longer asking for reconsideration of the original compliance complaint filed over the 2005-2006 school year because it was a statutory time limit problem. They never appealed that. They waited until December and simply filed a second compliance complaint. So they, if you look at page 190 of the administrative record, they state in there. I'm sorry, Your Honor. I'm sorry. It's not page 190. It's the actual, they're answering brief to, I mean, they're opening brief to this court. They explain to the court that on page, I believe it's page two of the opening brief, if I may. On page 15 of their opening brief, under heading C, I'm sorry, in their reply brief. I'm sorry. I'm sorry, Your Honor. In the reply brief on page 15, argument heading C, Palm Springs Unified School District is correct in asserting that appellants have precluded from re-litigating the issues raised in the May 17, 2006 compliance complaint because they never appealed that. Can the OAH give them what they're asking for now? Correct. Do they have the authority to give them what they're asking for? If they go back before OAH, there's no terms of a settlement agreement in effect to give them what they wanted. Thank you very much. Your Honor, I'm back to you. Your Honor, in response to OAH's authority, again, OAH doesn't have authority. That's not the issue. He just put you on the spot. He said you don't have an agreement in force and you're seeking on your second complaint terms of an agreement that doesn't exist. It does exist, Your Honor, because the student's current program, then current program from 05-06 has not changed since 05-06. This has been an ongoing dispute since that time frame, and it continues. They're still implementing the same program. If you ask the district, what does he get, it's the same thing that he got in the settlement agreement to the extent that they're still sending ABA personnel and he's not home, I don't know the specifics of whether they're going to continue to do that, but that's what they're still offering him. There's been no new IEP. It remains unchanged. The settlement agreement is his, quote, unquote, state put if there were a pending dispute and we sought an order seeking a state put, which is essentially, you know, order from OAH asking for them to maintain the status quo. The dispute. Why shouldn't the OAH, this says way beyond the complaint and the 12-B-6 review that we do. Why doesn't the OAH decide all this? Because, Your Honor, we've already executed a settlement agreement. That dispute, as you recognize. The gentleman says a settlement agreement is not in effect, and that's not in. But you've recognized, Your Honor, that the dispute started in 2006. As your honors are aware, disputes sometimes, unfortunately, when you end up in court and an appeal is the last. The gentleman says we waived that. We didn't waive it. There's no state put waiver in the settlement agreement anywhere. I mean, if you're right, all you would have had to do is go to OAH. Thirty days later, they would have said, we're not going to do anything for you, and then you have a ticket to go to district court. At great expense to my client, Your Honor. Well, it's been now two years on appeal, practically, and there's still no resolution. The little boy's not getting what he needs. Well, Your Honor, the OAH, we're just attempting to look to this court's decisions. Looking at Weiner, again, we've, in the past, in a number of cases, have filed OAH complaints, requesting their review of a settlement agreement, and consistently they've always been dismissed. You know, when you do that three or four times, eventually you decide, hey, this is futile, and I think that that's what we were relying upon, in addition to our interpretation of the Weiner and the Porter cases. Sounds like no confidence in the state system, rather than futility. In other words, you're not getting the results you want, so you come to us. No, Your Honor. We, that's what they cite when they dismiss our cases regarding settlement agreements. They're always citing Weiner. They're always citing Porter, saying we have no jurisdiction, no authority to interpret. You mention settlement agreement, the state's going to tell you they have no authority. Okay. Thank you very much. The case just argued this morning. 0756519, Michaels v. Soderbergh. Each side has ten minutes.
judges: Brunetti, Silverman, Conlon